UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **DAVID LUTES,** <br>     **Plaintiff,** <br><br> v. <br><br> **STOCK YARDS BANK & TRUST CO.,** <br>     **Defendant.** | **CIVIL ACTION NO. 5:22-53-KKC** <br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on defendant Stock Yards Bank & Trust Company (Stock Yards)'s motion to dismiss or, alternatively, for summary judgment. (DE 6). For the following reasons, the Court finds that plaintiff David Lutes can show no concrete injury caused by Stock Yards and therefore lacks standing. Stock Yards' motion to dismiss pursuant to 12(b)(1) will be GRANTED.

I.

Lutes brought this action under the Fair Credit Reporting Act (FCRA), 15 USC § 1681, et seq., and alleges violations arising out of defendants' false reporting of duplicate late payments on a home equity line of credit (HELOC) tradeline. Lutes originally named credit reporting service Equifax as a defendant, but those claims have since been dismissed. (DE 10). What remains of Lutes' complaint are two similar claims against Stock Yards: (1) negligent violation of the FCRA under 15 USC § 1681s-2(b) for false reporting and subsequent failure to investigate and (2) willful violation of the FCRA under § 1681s-2(b) for the same reasons. The latter claim would allow Lutes to seek punitive damages.

The loan at issue here is a HELOC that Lutes took out in May 2008 with Kentucky Bank. (DE 7, Ex. 3). Stock Yards merged with Kentucky Bank on June 30, 2021, and all of Kentucky Bank's loans (including Lutes' HELOC) became Stock Yards' loans. (Kincade Aff. at ¶ 3). That process required adding Kentucky Bank's loans to Stock Yards' computerized reporting systems and transitioning the reporting with the credit reporting services, which inevitably took some time. (*Id.* at ¶¶ 6-7). That process, at least as to credit reporting company Experian, was completed in December of 2021. (*Id.* at ¶ 7).

Lutes claims that he accessed his Equifax credit report in December of 2021 and noticed duplicate reports of late payments on his HELOC—one from Kentucky Bank and one from Stock Yards. (DE 7 at 1-2). Lutes initiated a dispute with Equifax, who promptly notified Stock Yards of the duplicate reporting. (*Id.* at 2). Lutes says that this duplicate reporting was present on his credit report as of February 2022. (*Id.*). Stock Yards says it contacted Experian after becoming aware of the reporting issue in December 2021. (DE 6 at 5). Stock Yards says that it learned in early January 2022 that Experian had yet to annotate the old Kentucky Bank loan as having been transferred to Stock Yards. By January 27, however, the Kentucky Bank loan, as it appeared on Lutes's Experian credit report, contained a notation that it had been "purchased by another lender." (DE 6 at 6). As it stands, Lutes' Experian, Equifax, and TransUnion credit reports all report that the loan with Kentucky Bank has been transferred and is now closed. (DE 6 at 6; *Id.*, Ex. A at 4; DE 7, Ex. 3 at 8).

Lutes and Stock Yards dispute some of the facts, including Stock Yards' account of their investigation of the matter. For one, Stock Yards mostly refers to dealings with Experian—not Equifax. Stock Yards does note, however, that it received an email from Equifax on March 21, 2022, advising them that Lutes' accounts "are on the credit file under Stockyards Bank and

Kentucky Bank [and] the Kentucky Bank account [is] showing transferred/sold and the Stockyards Bank accounts are showing pays as agreed." (Kincade Aff. at ¶ 18). The Court will not analyze Stock Yards' investigation of the matter. Because Lutes lacks standing, the nature of Stock Yards' reporting practices and investigation into Lutes' claims of duplicate reporting, and whether they amount to negligent or willful conduct under the FCRA, are merits arguments the Court will not reach.

What matters here is that Lutes alleges these violations under the FCRA and points to one specific injury resulting from Stock Yards' conduct. Lutes does not dispute that the reports of late payments on the HELOC, ranging from June 2016 to May 2017, are accurate. (*See* DE 7, Ex. 3). His claim is that the late payments appear twice on his credit report—one time under the Kentucky Bank loan and again under Stock Yards' (assumed) loan. Stock Yards' *duplicate* reporting and subsequent failure to investigate and correct the issue caused him harm. In his complaint, Lutes says that, because of Stock Yards' actions, he has been denied credit, forced to pay higher interest rates, and suffered emotional distress. (DE 1 at 4). But in his response to Stock Yards' motion for summary judgment, Lutes reduces his claims of injury to, and attempts to attach evidence in support of, only one injury—that he was denied mortgage refinancing with AnnieMac Home Mortgage "based solely" on the duplicate late payment reporting. (DE 7 at 3). To support this claim, Lutes attached as an exhibit a photocopy of what appears to be a letter from an AnnieMac branch manager. (DE 7, Ex. 4). The letter is addressed "to whom it may concern." It states that "David Lutes was unable to obtain mortgage financing in the loan program he was wanting due to the double reporting of late payments that kept his scores too low to qualify for it." (*Id.*).

## II.

Stock Yards argues that Lutes lacks standing to pursue his claims under the FCRA. "Standing is a threshold inquiry; it requires focus on the party seeking to have his complaint heard in federal court, and it eschews evaluation of the merits. The court is not to consider the weight or significance of the alleged injury, only whether it exists." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Accordingly, the Court must first determine if an injury exists—and nothing more.

"A plaintiff has standing if he suffered an injury in fact, fairly traceable to the defendant's alleged misconduct, which the relief he seeks would likely redress." *Krueger v. Experian Info. Sols., Inc.*, No. 20-2060, 2021 WL 4145565, at *2 (6th Cir. Sept. 13, 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The burden is on the plaintiff to establish each element required for standing and "[s]ince they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 360–61 (6th Cir. 2021). "The showing necessary to establish [standing] depends on the stage of the case; on summary judgment, we ask whether the plaintiff has set forth by affidavit or other evidence specific facts that support each element. *Beaudry v. TeleCheck Servs., Inc.*, 854 F. App'x 44, 45 (6th Cir. 2021); *see also Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019) ("At summary judgment, the current stage of this litigation, [the plaintiff] cannot rely on allegations alone but must set forth evidence demonstrating his standing.").

Lutes may have alleged facts demonstrating the elements of his claims. *See Butt v. FD Holdings, LLC*, 799 F. App'x 350, 352 (6th Cir. 2020) ("Where, as here, a case is at the [motion to dismiss] stage, the plaintiff must [only] clearly . . . allege facts demonstrating each element."

(citations and quotations removed)). But the litigation is no longer at the motion to dismiss stage. Stock Yards has moved for summary judgment and Lutes has specifically and unequivocally responded to that motion. Both parties have attached affidavits or other evidence alongside their pleadings. At this present posture the Court must consider the record before it and determine whether Lutes proves each element of standing with the manner and degree of evidence required at the summary judgment stage. *See Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989) (rejecting a claim that a district court untimely considered evidence because "the record indicates that [plaintiff] was fully aware of the potential summary judgment posture of this case when he opposed Appellees' original motion to dismiss, [plaintiff] went so far as to file his own [exhibits] in an attempt to protect his interests should the court proceed to summary judgment, [and plaintiff] filed a motion "In Opposition to Defendants' Motion for Summary Judgment").

Lutes argues that Stock Yards' motion for summary judgment comes before formal discovery. But the Court can properly consider the issue of standing and the evidence attached alongside the respective motions and response. *See id.*; *see also Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) (affirming district court's granting of summary judgment, prior to completion of discovery, on claims due to lack of standing); *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) ("The district court, while it clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, does not have an obligation to notify parties of the obvious."). If the evidence before the Court at this stage does not show specific facts supporting each element of standing, the Court must dismiss the claims.

**III.**

Though Lutes alleges various injuries in his original complaint he now only argues, and attempts to submit evidence showing, the denial of mortgage financing. Failing to address an issue in a response to a motion for summary judgment constitutes a waiver. *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018); *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). Further, at this stage, any allegation requires evidentiary support. *Clanton v. People of City of E. Lansing*, 86 F.3d 1155 (6th Cir. 1996) ("Mere conclusory allegations are not sufficient to withstand a motion for summary judgment."). Without any affidavits or other evidence offered to support any other injury, the Court will only consider whether this alleged injury confers standing.

### A. The Court will not consider the AnnieMac letter

Stock Yards argues that the Court should not consider the only evidence of a concrete injury here—the letter denying financing from AnnieMac Home Mortgage—because it is inadmissible. Stock Yards argues that the document is unauthenticated hearsay.

Evidence submitted in opposition to a motion for summary judgment must be admissible. *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007). Documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); "otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Specifically, "it is also the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e)." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Documents containing a trade logo, however, are deemed self-authenticating. *See id.*; *see also Savage v. Fed. Express Corp.*, 856 F.3d 440, 451 n.2 (6th Cir. 2017) (holding a letter, unsupported by declaration or deposition, but printed on company letterhead, to be self-authenticating); *Byrne*

*v. CSX Transp., Inc.*, 617 F. App'x 448, 452 (6th Cir. 2015) (holding invoices admissible as self-authenticating despite chain of custody issues because they bore company logos).

The AnnieMac letter contains multiple corporate inscriptions or insignia. (DE 7, Ex. 4). The AnnieMac logo appears twice. The logo appears next to a lengthy email signature containing the sender's name and his Nationwide Multistate Licensing System (NMLS) number. The document appears to stand up to scrutiny from a bare self-authentication standpoint. But a document's authenticity is not the only consideration. "A document is not admissible simply because it has been authenticated. For example, if offered to prove the truth of assertions made in it, the document will need to meet hearsay requirements." *Worthy v. Michigan Bell Tel. Co.*, 472 F. App'x 342, 344 (6th Cir. 2012) (internal quotations and citations removed). Here, the AnnieMac letter is being offered for the truth of the assertion made therein and does not meet hearsay requirements.

Accordingly, the Court will disregard the letter as inadmissible hearsay. "It is well-established in this circuit that otherwise inadmissible hearsay evidence may not be used to support or oppose a motion for summary judgment." *Lucas v. Chance*, 121 F. App'x 77, 79 (6th Cir. 2005) (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). It is true, however, that FRCP 56 only requires that a plaintiff's evidence be admissible as to its contents—not as to its form. *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 423 (6th Cir. 2021). This is why "deposition testimony will assist a plaintiff in surviving a motion for summary judgment, even if the deposition itself is not admissible at trial, provided substituted oral testimony would be admissible and create a genuine issue of material fact." *Id.* (citing *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997). But the document Lutes offers as evidence is unsworn. Lutes is offering the letter to prove the validity of its contents—that he was denied financing "due to the double reporting."

The letter is not, in fact, a letter of denial addressed to Lutes. It is addressed "to whom it may concern" and simply states the exact proposition that Lutes argues in his briefing. The only way that this letter could support Lutes's argument of a concrete injury is if the substantive assertions contained therein were true. *See Worthy*, 472 F. App'x at 344-45. This is hearsay without an applicable exception and must be disregarded. *See Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006).

### B.  Lutes cannot show Stock Yards caused a concrete injury

A defendant's mere procedural violation of the FCRA does not, by itself, establish standing for the plaintiff to pursue their claims. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-41 (2016). When a plaintiff alleges a violation of the FCRA, standing exists "only if he can show that the defendant's alleged procedural violation . . . caused him to suffer a concrete harm. *Krueger*, 2021 WL 4145565, at *2 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021)). A plaintiff does not automatically satisfy the Article III standing requirements "simply because Congress authorize[d] a plaintiff to sue [for] failing to comply with the [FCRA]." *Ward*, 9 F.4th at 361. Lutes must "show either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury." *Id.* That is because "a violation of the [FCRA] that results in the dissemination of an [inaccurate] report does not necessarily cause a concrete harm if the disclosure has no consequences for the consumer." *Huff*, 923 F.3d at 465.

Because Lutes does not argue the procedural violations amount to a concrete harm alone, nor does he link Stock Yards' alleged procedural violations to any sort of traditionally recognized injury,[1] he must show an independent concrete injury that "flow[ed] from [the] statutory violation."

---

[1] "[A] harm traditionally regarded as providing a basis for a lawsuit . . . [a] common-law or historical analogue . . . ." *Ward*, 9 F.4th at 362. Further, the FCRA "does not contain interlocking statutory protections [like the Fair Debt Collection Practices Act]. While it allows consumers to look into and correct information in their files, it does not provide a shield from imminent economic harm in the way the Fair Debt Collection Practices Act does. The Fair

*Ward*, 9 F.4th at 363. In other words, Lutes must show that the double reporting resulted in negative consequences. *See Huff*, 923 F.3d at 465.

Lutes cannot meet this burden. Even if the Court were to consider the letter denying financing and determined it to be sufficient to suggest a concrete injury, there is no evidence that it flowed from Stock Yards' conduct. *Butt*, 799 F. App'x at 353 (citing *Spokeo*, 578 U.S. at 338). For one, the letter is undated. There is no way to know when exactly Lutes was denied financing. Moreover, the letter merely states that Lutes was "unable to obtain mortgage financing in the loan program he was wanting" and that it was the double reporting that tanked Lutes' credit score. This is barely more than speculation and does not show any concrete injury flowing from Stock Yards' conduct. Further, AnnieMac made credit inquiries into Lutes three times. (DE 6, Ex. A at 6). These appear on Lutes' Transunion credit report. The first inquiry occurred months before Stock Yards even reported Lutes' HELOC. And the latter inquires occurred after the HELOC listed under Kentucky Bank was notated as "sold and transferred"—at least as to the Transunion and Experian credit reports. (Kincade Aff. at ¶ 12-14). Lutes attached an Equifax credit report and suggested the double reporting there is the cause of his injury. But there is no inquiry from AnnieMac on the attached Equifax report exhibit. (See DE 7, Ex. 2 at 25). Ultimately, Lutes' alleged injury is too vague and its connection to Stock Yards too tenuous to support standing under the FCRA.

## IV.

The Court finds that Lutes does not have standing to bring this action under the FCRA and the Court lacks jurisdiction to proceed. Accordingly, it is hereby ORDERED that Stock Yards

---

Credit Reporting Act's main target is the dissemination of inaccurate and harmful information." *Huff*, 923 F.3d at 468. Other statutes, like the FDCPA, link procedural violations to other statutory protections of concrete economic interests. The FCRA noes not. Thus, the argument that a procedural violation alone confers standing is weaker when the claims arise under the FCRA. *See id.*

Bank's motion to dismiss (DE 6) is GRANTED. Stock Yards' motion for summary judgment is DENIED AS MOOT.

This 6th day of February, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY